## STATE OF CONNECTICUT *v.* JERRY MITCHELL
## (12484)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued April 2—decision released July 1, 1986

*Jon L. Schoenhorn,* special public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue on this appeal is whether the trial court's finding of probable cause that the defendant had committed the crime with which he

was charged, made at a preliminary hearing mandated by article first, § 8, of the Connecticut constitution as amended,[1] is reviewable on appeal after the defendant's subsequent conviction. The defendant, Jerry Mitchell, was convicted of felony murder in violation of General Statutes § 53a-54c,[2] and sentenced to imprisonment for forty years. He appeals from that judgment.

The jury could reasonably have found the following facts. During the early morning hours of June 24, 1983, the victim, a thirty-four year old male, approached the defendant and three associates as they stood outside of a bar in Bridgeport. He asked them to help him locate a woman who had allegedly stolen his wallet. The four men agreed, but, when the victim went to get his car, they made plans to rob him. Subsequently, they accompanied the victim to another section of Bridgeport,

---

[1] Amendment XVII to the Connecticut constitution amended article first, § 8, to read in relevant part: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

[2] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

where they beat and stabbed him to death. Following the attack, the four men fled the scene in the victim's car. They later removed the tires from the car, sold them and split the proceeds. Two days afterward, the defendant was arrested and charged with felony murder in connection with this incident. A probable cause hearing was held on August 4, 1983, pursuant to article first, § 8, of the Connecticut constitution as amended and General Statutes § 54-46a. Following a finding by the trial court, *Callahan, J.,* that the state had established probable cause to believe that the defendant had committed the offense of felony murder, the defendant was arraigned and bound over for trial.

On appeal from the judgment against him, the defendant raises two claims of error.[3] He claims that the trial court should have dismissed the charge against him because: (1) the evidence presented at the preliminary hearing was insufficient to support the finding of probable cause; and (2) General Statutes § 54-46a (b), by prohibiting discovery motions at preliminary hearings, deprived him of his constitutional rights to due process and to confront and cross-examine the witnesses against him, and therefore vitiated the finding of probable cause. We find no error.

I

The defendant's first claim requires us to make a threshold determination of whether the trial court's finding of probable cause made at the preliminary hearing is reviewable on appeal after the defendant's conviction. This is a question of first impression, requiring us to interpret the new constitutional right to a probable cause hearing that became part of our state con-

---

[3] The defendant has withdrawn his claim of ineffective assistance of counsel in light of our holding in *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480 (1986).

stitution in November, 1982. Only if we decide this initial question in the affirmative need we address the defendant's substantive claim that the evidence presented at the hearing was insufficient to establish probable cause.

## A

The state contends that a finding of probable cause at a preliminary hearing should not be reviewable following conviction after trial. It argues that the probable cause hearing created by amendment to article first, § 8, of the state constitution was devised as a substitute for the simultaneously abolished indicting grand jury system. Reasoning by analogy from the well established rule barring review of the adequacy and competency of the evidence submitted to a grand jury to support an indictment, the state maintains that we should similarly foreclose review of the adequacy and competency of the evidence submitted at a probable cause hearing. In order to determine the validity of this syllogism, it is necessary for us to review briefly the genesis of the newly established probable cause hearing system and the purpose behind its creation.

Prior to November, 1982, the Connecticut constitution required a grand jury indictment as a prerequisite to the prosecution of anyone charged with a crime punishable by death or life imprisonment. This right to a grand jury determination of probable cause had its origin in our early statutory and common law and became part of our constitutional rights when the first state constitution was adopted in 1818. See *State* v. *Sanabria,* 192 Conn. 671, 674, 474 A.2d 760 (1984); Nahum & Schatz, "The Grand Jury in Connecticut," 5 Conn. B.J. 111, 111–21 (1931). Although originally conceived as a shielding device to protect individuals from unfounded prosecutions; *State* v. *Menillo,* 159 Conn. 264, 275, 268 A.2d 667 (1970); the grand jury

system came to be widely criticized for its secret operation and its ex parte nature. See Spinella, Conn. Crim. Proc. (1985) pp. 272–73; Berdon, "Connecticut Grand Juries: The Case for Reform," 54 Conn. B.J. 8, 9–16 (1980); Goldstein, "The State and the Accused: Balance of Advantage in Criminal Procedure," 69 Yale L.J. 1165, 1171 (1960). In Connecticut, an accused was generally permitted to attend the grand jury session and to question witnesses, but he was not permitted to have his attorney present or to present evidence in his own behalf. *State* v. *Couture,* 194 Conn. 530, 552–57, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); *State* v. *Avcollie,* 188 Conn. 626, 631–33, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Menillo,* supra, 274. In addition, in order to preserve the traditional secrecy of grand jury proceedings, the use of the transcript of the session itself was carefully limited by statute;[4] *State* v. *Couture,* supra, 554–55; *State* v. *Canady,* 187 Conn. 281, 286–87, 445 A.2d 895 (1982); and this legislative proscription was strictly construed by this court. *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 708–709, 501 A.2d 377 (1985); *State* v. *Canady,* supra, 287. The statutory interdiction of access to the grand jury transcript meant that a person against whom an indictment had been returned was effectively precluded from obtaining a judicial review of the evidentiary basis for his indictment. *State* v. *Vinal,* 198 Conn. 644, 656, 504 A.2d 1364 (1986); *State* v. *Morrill,*

---

[4] General Statutes § 54-45a (b) limited the use of grand jury transcripts to the following: "(b) The transcript of such proceedings may not be used as evidence in any proceeding against the accused except for the purpose of impeaching a witness, attacking the credibility of a witness or proving inconsistent statements of a witness. The transcript may also be used as evidence in a prosecution for perjury committed by a witness while giving such testimony."

197 Conn. 507, 519, 498 A.2d 76 (1985); *State* v. *Couture,* supra, 555; *State* v. *Canady,* supra, 287.

In an attempt to correct these perceived inequities of the grand jury system and to provide expanded protections to an accused charged with a serious crime; see 24 H. R. Proc., Pt. 10, 1981 Sess., pp. 3148–50, remarks of Rep. Alfred J. Onorato; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1981 Sess., pp. 369–70, remarks of Rep. Richard D. Tulisano;[5] the legislature in 1981 proposed a constitutional amendment to abolish the grand jury indictment system in Connecticut and to replace it with an open and adver-

---

[5] During floor debate over the proposed amendment, Representative Alfred J. Onorato made the following observations concerning the differences between the then-existing grand jury system and the proposed probable cause hearing: "Basically right now, Mr. Speaker, when an individual is arrested for the crime of murder or that particular crime which calls for life imprisonment or the death penalty, murder, kidnapping, and certain other crimes, the State's Attorney convenes the Grand Jury. What that means is that the State's Attorney has to call for a Grand Jury consisting of some 18 people. The 18 people then meet in the Superior Court and prepare to hear evidence on whether or not there are [evidentiary] matters to hand down an indictment. The only ones that can testify, and by the way the Grand Jury can't ask questions at this proceeding, the only ones that can testify are obviously the state's witnesses. No one else is allowed to testify. Most Grand Juries can be done without a State's Attorney or without a Judge. So you have some inspector in there with the state's witnesses going through the process, and inevitably you have an indictment that is handed down." 24 H. R. Proc., Pt. 10, 1981 Sess., p. 3148.

"This particular [probable cause hearing] process would protect those accused from arbitrary or unjustified use of the Grand Jury. And those who know how a Grand Jury system works, knows [sic] the abuses that are inherent to it and this would be a better process, at least if you want to see justice done." Id., p. 3150.

During public hearings on the proposed amendment, Representative Richard D. Tulisano made the following observation: "[T]he Grand Jury is not what it used to be, or intended to be at the time of the Magna Carta, I guess. So that if we substituted in the Grand Jury constitutionally, a preliminary hearing type system . . . it would take the place of what the original purpose of the Grand Jury must have been, and it would insure that they got them in the most serious offenses." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1981 Sess., p. 370.

sarial probable cause hearing. See Substitute House Joint Resolution No. 36 (1981). This proposed amendment was approved by the electorate on November 2, 1982, and certified by the secretary of state on November 24, 1982, as amendment seventeen to the Connecticut constitution. *State* v. *Sanabria,* supra, 676–77.

Amendment seventeen to article first, § 8, coupled with implementing legislation effective May 26, 1983; see General Statutes § 54-46a;[6] has created expansive

---

[6] "[General Statutes] Sec. 54-46a. PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state on or after May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

new rights for an accused charged with a serious crime.[7] In order to provide such an individual with greater protections than he was afforded under the former grand jury system; see 26 S. Proc., Pt. 4, 1983 Sess., pp. 1413–14, remarks of Sen. Howard T. Owens; 26 H. R. Proc., Pt. 8, 1983 Sess., pp. 2945–46, remarks of Rep. Alfred J. Onorato; 26 H. R. Proc., Pt. 10, 1983 Sess., p. 3783, remarks of Rep. Alfred J. Onorato;[8] this new provision guarantees that no one will be forced to stand trial for a serious crime unless a court has first made a finding of probable cause at an open hearing in which the accused is provided with a full panoply of adversarial rights. A judicial determination of probable cause has thus been made a constitutional prerequisite to the court's subsequent jurisdiction to hear the trial.

[7] Under this amendment, serious crimes are considered those punishable either by death or by life imprisonment.

[8] During floor debates concerning Public Act 1983, No. 83-210, later codified as General Statutes § 54-46a, which established procedures for probable cause hearings, Representative Alfred J. Onorato made the following remarks: "[A]t a hearing of probable cause action, this constitutional amendment that was adopted by the citizens in 1982 takes the place of the Grand Jury system and under the Grand Jury system, the rights that are enumerated for defense in the file copy were not given to the defendants in the Grand Jury system. And what the Grand Jury system was was that any evidence that the state sought to bring in, without explanation or anything else, came in and the individual is bound over to the Superior Court." 26 H. R. Proc., Pt. 8, 1983 Sess., p. 2946.

"What the bill does now is set up a procedure by which hearings and probable cause shall operate for those crimes punishable by death or life imprisonment in lieu of the grand jury that was done away with by the Constitutional amendment in 1982. It explains the rights that the defendants have in this hearing that they did not have in the grand jury hearing." 26 H. R. Proc., Pt. 10, 1983 Sess., p. 3783.

During Senate debates, Senator Howard T. Owens made the following remarks: "This has really gone quite far because we've substituted this probable cause bill for a Grand Jury presentment which before we, no one could cross examine at all, so it's a progressive step in the system of criminal justice and it certainly protects the rights of the individuals more without (inaudible) the interests of the State of Connecticut. It's a fine piece of legislation." 26 S. Proc., Pt. 4, 1983 Sess., p. 1414.

The defendant claims that, in order to give meaning to this new constitutional safeguard, he must be afforded an opportunity to challenge on appeal the jurisdictional underpinnings of his conviction. Without such an opportunity for appellate review, he argues, the expanded protection envisioned by the adoption of amendment seventeen is but a hollow shell. We agree.

Appellate review of the adequacy of a constitutionally mandated determination of probable cause is required to give effect to the legislative history of amendment seventeen to article first, § 8. That history unequivocally manifests the intent of the legislature to adopt the preliminary probable cause hearing system as a constitutional safeguard to afford greater protection of an accused's rights than the grand jury system had provided. Displacement of the indicting grand jury displaces the rationale behind our historical refusal to review grand jury proceedings. There is no further need to preserve the secrecy of the indictment process when a probable cause hearing is now conducted in public.[9] We believe that appellate review of the determination of probable cause is essential to fulfilling the purpose of amendment seventeen.

The state argues, however, that such a reading of article first, § 8, as amended is in direct conflict with our recent holding in State v. Fleming, 198 Conn. 255, 502 A.2d 886 (1986). In that case, we held that an illegal arrest, without more, "impose[d] no jurisdictional barrier to a defendant's subsequent prosecution" nor did it require "a voiding of the resulting conviction." Id., 263. The state asks us to extend the principle underlying Fleming and to hold that all defects in pretrial procedures are cured by a subsequent conviction after

---

[9] In contrast to General Statutes § 54-45a, which carefully limits the use of the grand jury transcript, § 54-46a (b) expressly makes the transcript of the preliminary hearing available to defendants with no restrictions on its use.

trial and are therefore not reviewable on appeal. We believe, however, that a contrary conclusion is mandated by the significant constitutional differences between an illegal arrest and an invalid finding of probable cause at a constitutionally required preliminary hearing.

Unlike the adversarial probable cause hearing, an arrest is neither an integral part nor a critical stage of a judicial proceeding. *State* v. *Carr,* 172 Conn. 458, 472, 374 A.2d 1107 (1977); *State* v. *Watson,* 99 Idaho 694, 697, 587 P.2d 635 (1978); see *Kirby* v. *Illinois,* 406 U.S. 682, 688–89, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). An arrest is simply a device which "serves to insure the presence of the accused at the proceedings which name him as a violator and to insure his presence afterward to accept the judgment of the court if he is found guilty." *State* v. *Watson,* supra, 697. Consequently, any irregularities in the arrest procedure do not affect the subsequent jurisdiction of the court to hear the case. *United States* v. *Crews,* 445 U.S. 463, 474, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); *Frisbie* v. *Collins,* 342 U.S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541 (1952); *Ker* v. *Illinois,* 119 U.S. 436, 440, 7 S. Ct. 225, 30 L. Ed. 421 (1886); *State* v. *Fleming,* supra, 262–63.

The adversarial probable cause hearing at issue here, on the other hand, is a critical stage in the prosecution; *Coleman* v. *Alabama,* 399 U.S. 1, 7, 9–10, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970); and, under the express terms of article first, § 8, of our state constitution as amended, is a jurisdictional prerequisite to continuing prosecution. Accordingly, an invalid finding of probable cause at such a hearing undermines the court's power to hear the case at trial.

In addition, we note that an individual who has been illegally arrested has civil redress in the nature of a

common law tort action or an action under 42 U.S.C. § 1983. See *Malley* v. *Briggs,* 475 U.S. 335, 343–44, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). There is no equivalent civil remedy for an invalid finding of probable cause at a preliminary hearing. Absent appellate review of the probable cause determination, therefore, there would be no recourse whatsoever for even the most blatant violation of this clear constitutional right. We agree with Justice Thurgood Marshall of the United States Supreme Court that "a right without an effective remedy has little meaning." *Guardians Assn.* v. *Civil Service Commission, New York City,* 463 U.S. 582, 626, 103 S. Ct. 3221, 77 L. Ed. 2d 866 (1983) (Marshall, J., dissenting).

In arguing for a contrary conclusion, the state refers us to several cases from other jurisdictions in which courts have refused to review after conviction the validity of a pretrial finding of probable cause. Most of these cases are inapposite because they concern defects in the arrest procedure rather than defects in probable cause hearings. See *Yellen* v. *Nelson,* 680 P.2d 234 (Colo. 1984); *Ramirez* v. *State,* 455 N.E.2d 609 (Ind. App. 1983); *State* v. *Taylor,* 422 So. 2d 109 (La. 1982); *In re Harris,* 38 Wash. App. 684, 689 P.2d 95 (1984). One cited case which appears at first glance to be on point is *United States* v. *Millican,* 600 F.2d 273, 277–78 (5th Cir. 1979), in which the Fifth Circuit held that the total failure to hold a probable cause hearing prior to trial, although improper, did not vitiate the defendant's subsequent conviction. Id., 278. The state's reliance on this case, however, is misplaced. Unlike the present defendant, the defendant in *Millican* had no constitutional right to a probable cause hearing as a prelude to further proceedings. Id. 276; see *Gerstein* v. *Pugh,* 420 U.S. 103, 119–20, 95 S. Ct. 854, 43 L. Ed. 2d 54

(1975).[10] The Connecticut constitution, on the other hand, not only specifically guarantees this right to persons charged with serious crimes, it also makes such a hearing a jurisdictional prerequisite to continuing prosecution. The state has cited us to no jurisdiction, nor has our research discovered any, in which an accused enjoys the identical constitutional protection afforded by article first, § 8, of the Connecticut constitution as amended.[11] It is the unique nature of this express constitutional guarantee, coupled with the legislative history indicating an intent thereby to increase the protection afforded to criminal defendants, that impels us to the conclusion that appellate review of the finding of probable cause is warranted.[12] Accordingly, we will review the evidence presented at the defendant's preliminary hearing to determine if it was

---

[10] Under *Gerstein* v. *Pugh,* 420 U.S. 103, 112–14, 120–22, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), a criminal defendant possesses a constitutional right to a judicial determination of probable cause to arrest, either in the issuance of an arrest warrant or in an ex parte proceeding shortly after arrest. There is, however, no federal constitutional right to an adversarial probable cause hearing as a prerequisite to prosecution. Id., 120.

[11] Several states provide for *either* a grand jury indictment *or* a preliminary hearing to establish probable cause. See, e.g., Idaho Const., art. I § 8; N.M. Const., art. II § 14; Or. Const., art. VII § 5; Utah Const., art. I § 13. Of these states, apparently only Idaho refuses to review the preliminary hearing's finding of probable cause on appeal after conviction. *State* v. *Mitchell,* 104 Idaho 493, 500, 660 P.2d 1336 (1983); *Mascarenas* v. *State,* 80 N.M. 537, 538–540, 458 P.2d 789 (1969); *State* v. *Clark,* 291 Or. 231, 234–35, 630 P.2d 810 (1981); *State* v. *Anderson,* 612 P.2d 778, 781–82, 787 (Utah 1980). We have discovered no state which has expressly implemented a probable cause hearing system as a total replacement for, and improvement of the grand jury.

[12] The concurring opinion's analogy to the harmless error doctrine is flawed. Antecedent to a finding of harmless error is a *review* of the claim of error at issue. The concurring opinion's approach would bar review of the finding of probable cause altogether. Such an extension of the harmless error doctrine is unwarranted in the face of the clear expression of intent by the people of this state to create a specific new constitutional protection for those charged with serious crimes.

sufficient to establish probable cause to continue his prosecution.[13]

## B

The defendant claims that the evidence presented by the state was insufficient to establish probable cause that he committed the crime of felony murder. The defendant concedes that there was sufficient evidence to establish that he was present during the assault and robbery of the victim. He argues, however, that there was no evidence to support a finding that he actually participated in the crime. At the conclusion of the probable cause hearing, and again prior to trial, the defendant moved to dismiss the charge on this ground. Both motions were denied.

In order to decide the defendant's claim, we must examine the evidence presented at the preliminary hearing to determine whether it was sufficient to support the trial court's finding of probable cause. See *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983). The testimony of six witnesses at the hearing established that, several days after the murder in question, the defendant had given a statement to the police in which he admitted that he had accompanied three men when they robbed, beat and stabbed the victim. Following this assault, he fled the scene with the three participants in the victim's car, and was seen several hours later in the company of one of the attackers. The other three men each gave a statement to the police in which each admitted joining in either the attack or the robbery of the victim.

---

[13] Although the defendant raised at oral argument the question of interlocutory review of the determination of probable cause, this issue was not raised either before the trial court or in the defendant's brief. Therefore, we decline to consider it here.

The defendant claims that, because there was no direct evidence that he had actually participated in the crime, the trial court's finding of probable cause was erroneous. We disagree. The quantum of evidence necessary to establish probable cause at a preliminary hearing is less than the quantum necessary to establish proof beyond a reasonable doubt at trial, as the defendant concedes. *State* v. *Green,* 237 Kan. 146, 148, 697 P.2d 1305 (1985); *Myers* v. *Commonwealth,* 363 Mass. 843, 850, 298 N.E.2d 819 (1973); *State* v. *Dunn,* 121 Wis. 2d 389, 396, 359 N.W.2d 151 (1984). In making its finding, the court had to "determine whether the government's evidence would warrant a person of reasonable caution to believe that the accused [had] committed the crime." Arenella, "Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication," 78 Mich. L. Rev. 463, 478 (1980); *Brinegar* v. *United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).

Using this standard, we are convinced that the trial court correctly found that probable cause had been established. Under the felony murder statute with which the defendant was charged, it was not necessary for the state to establish that the defendant had personally joined in the attack on the victim. It was sufficient to establish that he had committed the underlying felony of robbery, either as a principal or as an accessory, and that the victim had been killed as a result. General Statutes § 53a-54c. See *State* v. *Fleming,* supra, 268 n.15. The evidence before the court showed that the defendant had admitted being in the company of three participants at the time the crime was committed, and that he had further admitted fleeing the scene with them in the victim's car. In addition, he was seen with one of the participants several hours later. Although the defendant stopped short of implicating

himself in the actual commission of the crime, it was reasonable for the trial court to draw the inference that he would not have fled with the assailants and remained in their company unless he was also involved. We find, therefore, that there was sufficient evidence to support the trial court's finding of probable cause.

## II

In his second claim of error, the defendant labels unconstitutional that portion of § 54-46a (b) which prohibits discovery motions at probable cause hearings. The defendant makes no claim that he is constitutionally entitled to the broad range of discovery materials permitted by statute to a criminal defendant at trial. See General Statutes §§ 54-86a and 54-86b. He argues, however, that by barring discovery motions altogether, § 54-46a (b) prevents disclosure of even exculpatory information within the control of the prosecution, thereby impairing his constitutional rights to due process and to cross-examine witnesses effectively.[14] At the start of the probable cause hearing, the defendant

[14] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The fourteenth amendment to the United States constitution provides in relevant part: "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of the law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 8, of the Connecticut constitution as amended provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to

moved to dismiss the charge on the basis of the alleged unconstitutionality of § 54-46a (b). This motion was denied.

We conclude that § 54-46a (b) is constitutional when read in conjunction with the prosecution's on-going constitutional duty to disclose exculpatory material to a criminal defendant independent of a defense motion or request. See *United States* v. *Agurs,* 427 U.S. 97, 106–107, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976); *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Dolphin,* 195 Conn. 444, 455, 488 A.2d 212, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Rodriguez,* 180 Conn. 382, 397, 429 A.2d 919 (1980). The state has conceded that this constitutional obligation applies to the preliminary hearing stage of prosecutions, including hearings to determine probable cause, and we agree. Only recently, we noted that "[t]he unmistakable tone of *Brady* is that evidence required to be disclosed must be disclosed at a time when it can be used." *State* v. *Pollitt,* 199 Conn. 399, 414, 501 A.2d 8 (1986); see also *State* v. *Couture,* supra, 557. Since the adversarial probable cause hearing at issue here is an essential part of a defendant's criminal prosecution, the constitutional obligation to disclose exculpatory material attaches at that time. Consequently, § 54-46a (b)'s ban on defense discovery motions did not impair the defendant's constitutional rights.

The defendant makes no claim that the prosecution failed to disclose any exculpatory material at his prob-

have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed."

able cause hearing. On the contrary, we note that the state turned the defendant's statement to police over to the defense during that hearing, and that defense counsel subsequently used the statement in his cross-examination of a police witness. We note also that the defendant later submitted that statement to the court in an attempt to rebut its finding of probable cause. In light of this record, the defendant has established no violation of his constitutional rights.

There is no error.

In this opinion DANNEHY and SANTANIELLO, Js., concurred.

SHEA, J., concurring. Although I agree with the result, I disagree with part IA of the opinion that holds the trial court's finding of probable cause to be reviewable even though the sufficiency of the evidence to support the defendant's conviction after a trial on the merits remains unchallenged. A finding by a jury that a person is guilty beyond a reasonable doubt a fortiori signifies that there is probable cause to prosecute him. Even if the evidence offered at the probable cause hearing in this case had been found inadequate by the majority to support the finding of probable cause made by the trial court, it would still make no sense to vacate the jury's finding of guilt beyond a reasonable doubt after a fair trial in order to require the state to make an adequate showing of probable cause at this stage of the proceeding. Such an exercise in futility, which would ordinarily amount to a rerun of evidence presented at the trial that has already been determined to be adequate to support a conviction, is an utter waste of judicial resources that should be conserved for more useful purposes.

I fear that this unnecessary chore the majority has chosen to undertake will become a frequent ritual of

this court in appeals from murder convictions. Henceforth the focus of our evidentiary review in murder cases will be, not the evidence at trial, which a jury found sufficient for a conviction beyond a reasonable doubt, but the evidence presented at the probable cause hearing, where the only issue to be determined is whether there is enough evidence to warrant a prosecution. In those cases where the trial court as well as the prosecutor have overlooked some essential element of the crime at the probable cause hearing, the conviction presumably will be set aside despite ample proof of such element at the trial.

Of more serious consequence than the additional burden the majority opinion casts upon the judicial system is the likelihood that in some instances murderers who have been convicted after a fair trial will escape the consequences of their crimes because of the unavailability of some witnesses for a second trial and the staleness of their recollection. Presumably the transcript of their testimony at the first trial could still be used, but its impact seldom would measure up to the impression created by the testimony of live witnesses.

"[I]t is the duty of a reviewing court to consider the trial court record as a whole and to ignore errors that are harmless,[1] including most constitutional violations." *United States* v. *Hasting,* 461 U.S. 499, 509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). This court has frequently applied this principle to violations of constitutional

---

[1] Since the thesis of this concurring opinion is that an erroneous finding of probable cause is of no import once there has been a trial on the merits, it follows that review of the specific claim of error is unnecessary. Contrary to the suggestion in footnote 12 of the majority opinion, this court ordinarily does not review claims of error that must inevitably be found harmless. *State* v. *Fleming,* 198 Conn. 255, 259, 502 A.2d 886 (1986) (legality of arrest not resulting in illegally obtained evidence); *Blanchard* v. *Bridgeport,* 190 Conn. 798, 803 n.1, 463 A.2d 553 (1983) (general verdict rule); *Slattery* v. *Maykut,* 176 Conn. 147, 150 n.3, 405 A.2d 76 (1978) (ruling excluding evidence that is not material in view of trial court's conclusions).

rights of an accused. *State* v. *Shifflett,* 199 Conn. 718, 508 A.2d 748 (1986) (use of photograph obtained during illegal search to obtain confession); *State* v. *Fleming,* 198 Conn. 255, 258–63, 502 A.2d 886 (1986) (illegal arrest does not void subsequent prosecution and conviction); *State* v. *Harman,* 198 Conn. 124, 131, 502 A.2d 381 (1985) (delay in appointment of new counsel to represent defendant). Not every constitutional violation requires automatic reversal. "The question is whether there is a reasonable possibility that the [violation] complained of might have contributed to the conviction." *Fahy* v. *Connecticut,* 375 U.S. 85, 86–87, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963); see *Chapman* v. *California,* 386 U.S. 18, 23–24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). In no realistic sense can an erroneous finding of probable cause be said to have contributed to a conviction after a trial on the merits unless the finding in some manner has resulted in the use of prejudicial evidence at the trial.

The United States Supreme Court has held that an indictment may not be dismissed because of the inadequacy or incompetence of the evidence adduced before the grand jury to support it. *Costello* v. *United States,* 350 U.S. 359, 362, 76 S. Ct. 406, 100 L. Ed. 397 (1956); *Holt* v. *United States,* 218 U.S. 245, 247, 31 S. Ct. 2, 54 L. Ed. 1021 (1910). Even where an indictment is based on evidence obtained in violation of a constitutional right, it may stand. *United States* v. *Blue,* 384 U.S. 251, 255, 86 S. Ct. 1416, 16 L. Ed. 2d 510 (1966). This court has refused to set aside convictions despite a constitutionally erroneous instruction to the grand jury on the presumption of innocence; *State* v. *Stepney,* 181 Conn. 268, 283–84, 435 A.2d 701 (1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 799 (1981); a recognized abuse of discretion in excluding a defendant from the grand jury hearing; *State* v. *Avcollie,* 188 Conn. 626, 633, 453 A.2d 418 (1982), cert.

denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); and a plain violation of a rule of practice prohibiting anyone but regular members of the grand jury from being present during deliberations. *State* v. *McGann,* 199 Conn. 163, 167, 506 A.2d 109 (1986).

"It is only a violation of the most sacrosanct of constitutional rights in the indicting process, such as racial discrimination in the composition of the grand jury, that can justify the illogic of remanding a case to redetermine whether there is probable cause to prosecute a defendant whose guilt after a fair trial has been found beyond a reasonable doubt." *State* v. *McGann,* supra, 169; see *Vasquez* v. *Hillery,* 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Rose* v. *Mitchell,* 443 U.S. 545, 551–59, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979). An erroneous determination of probable cause has never previously been regarded as violating such a significant constitutional right. The majority opinion cites no authority, and I am aware of none, supporting a review of a grand jury indictment following a conviction at trial for the purpose of determining whether the finding of probable cause was supported by sufficient proof. See *Costello* v. *United States,* supra, 362–63.

There is nothing in the history of the adoption of the 1982 amendment to article first, § 8, of our state constitution to warrant the innovation sponsored by the majority in appellate treatment of findings of probable cause. The nonreviewability of such findings was never based wholly upon the traditional secrecy of grand jury proceedings, as the opinion assumes, because even errors in grand jury proceedings fully disclosed by transcripts have been held not reviewable. *State* v. *McGann,* supra, 166–70; *State* v. *Stepney,* supra, 283–84; see *Costello* v. *United States,* supra, 363–64. The language of the amendment and its implementing legislation, General Statutes § 54-46a,

contains no support for the view that appellate review of probable cause determinations is now mandated in every case. The amendment merely substituted for the phrase, "unless on a presentment or an indictment of a grand jury," the language, "unless upon probable cause shown at a hearing in accordance with procedures prescribed by law." Conn. Const., amend. XVII. General Statutes § 54-46a, which implements the amendment, prescribes a new probable cause procedure allowing a defendant to have counsel at the hearing, to present argument to the court, to cross-examine witnesses and to obtain a transcript. These modifications of our former grand jury procedure are wholly unrelated to the propriety of appellate review of the evidence offered to support a finding of probable cause. Nor do they transform deficiencies in such findings into jurisdictional flaws, as the majority opinion holds, of such significance as to require a criminal proceeding to be recommenced ab initio after a trial on the merits. The language of article first, § 8, that "[n]o person shall be held to answer for any crime, punishable by death or life imprisonment," which is claimed to require this consequence, was not changed by the 1982 amendment. Since this court has not previously viewed that provision to create any jurisdictional barrier to a prosecution upon an indictment that is flawed for lack of evidence or for incompetent evidence, it is difficult to perceive why a change in the mechanism for determining probable cause should have this result.

Apparently the principal concern of the majority is that, unless appellate review is provided of probable cause determinations, "the expanded protection envisioned by the adoption of amendment seventeen would become a hollow shell." The same argument can be advanced with respect to many other constitutional rights where the harmless error principle has been applied. A demonstration of prejudice, nevertheless,

has been deemed essential to warrant overturning a conviction for constitutional violations equally as basic as that involved here. *State* v. *Shifflett,* supra; *State* v. *Fleming,* supra; *State* v. *Harman,* supra. It is incorrect to assume that no occasion will ever arise for review of probable cause findings made pursuant to § 54-46a. Where an erroneous determination has led the police to discover evidence used at the trial, as where a defendant has confessed during the period of confinement following the hearing, a claim of prejudice might well be justified. Just as evidence obtained as the result of an illegal arrest continues to necessitate our review of probable cause for the arrest, despite the demise of *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), the nonreviewability of probable cause found pursuant to § 54-46a, where there has been no prejudice at the trial, does not foreclose such review where prejudice can be shown. See *State* v. *Fleming,* supra, 261–63. Any concern that trial judges will feel wholly uninhibited in finding probable cause to exist unless such a finding is reviewable in every instance, regardless of any prejudice that may ensue, is unwarranted. They, no less than the members of this court, are sworn to uphold the constitution and the laws of this state. General Statutes § 1-25.

Accordingly, I concur only with the result.

ARTHUR H. HEALEY, J., concurring. I agree with the result reached by the majority, and although I join in the concurring opinion of Justice Shea, I choose to write separately in order to emphasize a point not made strongly enough for me in his opinion.

In our system, every criminal accused is constitutionally guaranteed a fair trial. I do not perceive any need to address a claim that a probable cause hearing now mandated by the Connecticut constitution, article first, § 8, as amended (amendment seventeen), must be reviewed

by us where the record does not adequately support a claim that such a hearing flawed the trial-in-chief, the ultimate innocence-guilt proceeding, with error that violates the constitutional rights of an accused. Such a view does not make a "hollow shell" of the protection afforded by the adoption of this amendment that the majority opinion hypothesizes.

I therefore concur in the result.