# IN RE JONATHAN M.*
## (AC 14693)

O'Connell, C. J., and Heiman and Hennessy, Js.

---

* In accordance with the spirit and intent of General Stautes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued May 30—officially released September 2, 1997

*Mark Shapera*, deputy assistant public defender, for the appellant (respondent).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Francis J. Carino* and *Joseph J. Kristan, Jr.*, juvenile prosecutors, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The juvenile respondent appeals from the order of the Superior Court, Juvenile Matters, transferring his case to the regular criminal docket of the Superior Court in accordance with General Statutes (Rev. to 1993) § 46b-127.[1] The trial court, after a hearing,

---

[1] General Statutes (Rev. to 1993) § 46b-127 provides in pertinent part: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. . . . The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made

found that the respondent was fifteen years of age at the time the murder was committed and that there was probable cause to believe that the respondent actually committed the acts with which he was charged. The respondent claims on appeal that the trial court improperly (1) denied his motion to suppress evidence, (2) denied his motion for discovery, (3) denied his motion to dismiss the motion to transfer as untimely and (4) granted the motion to transfer.[2] We affirm the judgment of the trial court.

I

The respondent first claims that his confession and the resulting physical evidence procured as a result of that confession should be suppressed because they were obtained in violation of General Statutes (Rev. to 1993) § 46b-137[3] and both the federal and state constitutions. The respondent sets forth six grounds to support his claim. We address each ground in turn.

A

The respondent argues that he did not voluntarily waive his federal and state constitutional right to remain silent before he confessed to the offenses. The respondent claims that his waiver was not knowing or volun-

by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory information. . . ."

[2] We do not address this claim separately because it raises the same issues as the respondent's other three claims on appeal.

[3] General Statutes (Rev. to 1993) § 46b-137 (a) provides: "Any admission, confession or statement, written or oral, by a child shall be inadmissible in any proceeding for delinquency against the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him."

tary,[4] and was therefore invalid, for the following reasons: (1) the police withheld significant information from both him and his mother thereby vitiating the purported waiver; (2) his mother's conflict of interest was so strong that she could not have been "present" as that term is used in § 46b-137; and (3) the totality of the circumstances under which the confession was given prevented the respondent from voluntarily waiving his right to remain silent. We are unpersuaded.

The respondent avers that the police did not inform him of the following significant information: he could be tried as an adult; he was a suspect in the murder of his grandmother; his mother provided a written statement to the police in which she stated that she suspected that her son, the respondent, was involved in the murder of her mother; he was free to leave at any time; if he asked the questioning police officers for an attorney or stopped answering questions, he would be given a ride home by the police. He further claims that he was denied the opportunity to consult privately with his mother. This, he claims, coupled with the withholding of significant information by the police, deprived him of the ability to appraise and understand his circumstances. The respondent argues that without this understanding it was impossible for him to make a knowing and intelligent waiver of his constitutional right to remain silent. We disagree.

"[T]he overwhelming weight of the authorities . . . have applied a totality of the circumstances test to confessions by juveniles, and have rejected the notion that such a confession is rendered involuntary solely by virtue of the fact that the police did not inform the juvenile that he could be prosecuted as an adult, rather

---

[4] *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), requires that a waiver be "an intentional relinquishment or abandonment of a known right or privilege."

than as a juvenile." *State* v. *Perez*, 218 Conn. 714, 727, 591 A.2d 119 (1991). The waiver analysis "requires consideration of 'the particular facts or circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " *State* v. *Mercer*, 208 Conn. 52, 70, 544 A.2d 611 (1988). We note that there is no statutory or case law precedent that we have been able to find, or that has been cited by the respondent, that requires the police to inform a minor suspect that his parent suspects that he has committed an offense or that the police would give him a ride home if he stopped answering questions.

The record belies the respondent's factual claims regarding the circumstances of the confession. The trial court found and the record shows that the respondent and his mother were informed (1) that the respondent had the right to have a lawyer present during questioning and, if he could not pay for one, a lawyer would be provided, (2) that he had the right to refuse to make any statements, (3) that he had the right to cease answering questions at any time, and (4) that any statements he made during the interview could be introduced into evidence against him. The respondent and his mother acknowledged in writing that they had received these advisements as part of the *Miranda*[5] warnings given them, understood the warnings, and voluntarily chose to proceed without an attorney present. In addition, testimony at the transfer hearing showed that just after receiving the *Miranda* warnings the respondent acknowledged that he had prior experience with the police. Furthermore, the trial court found that the respondent's mother was given ample opportunity to talk with her son privately but she did not accept the offer and that the respondent did not make a request to speak to his mother privately.

---

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The respondent further claims that his waiver was not valid because his mother had a conflict of interest based on her relationships to both the victim and the accused and that her emotional state precluded her from meaningful compliance with the parental presence requirement of § 46b-137.[6] The respondent argues that the "parental presence" component of § 46b-137 requires that the parent be conflict-free and emotionally stable.

The record shows that the respondent's mother was the daughter of the murder victim, had voiced her suspicions about the respondent's involvement in the crimes, and was visibly upset. "The warnings required by § 46b-137 (a) are equivalent to the *Miranda* warnings. J. Bruckmann, G. Nash & J. Katz, Connecticut Criminal Caselaw Handbook (1992 Sup.) p. 90. The purpose of the *Miranda* warnings is to enhance an accused's ability to exercise fifth amendment rights knowingly, intelligently and voluntarily. *State* v. *Barrett*, 205 Conn. 437, 447, 534 A.2d 219 (1987). Thus, the purpose of the § 46b-137 (a) warnings is to help an accused make a valid decision to speak or remain silent. See id. Provided both the accused and the accused's parents or guardian receive that information, the purpose of § 46b-137 (a) is achieved." *In re Enrique S.*, 32 Conn. App. 431, 436, 629 A.2d 476 (1993).

The record also shows that the respondent's mother understood the *Miranda* warnings. We conclude, therefore, that the trial court properly found that the mother adequately met the statutory standard of parental presence.

## B

The respondent next argues that the evidence should have been suppressed because his mother was not

---

[6] See footnote 3.

"present" when the inculpatory statements were made. The respondent argues that the meaning of "present" under § 46b-137 strictly requires that the child and parent be within each other's sight. He maintains that while he was being questioned, his mother left the room and, because of this, she was not present for purposes of the statute during a period when the respondent made incriminating statements. The record does not support this claim.

The trial court found and the record reflects the following facts. The respondent's mother left the interview room when it became clear to her that the respondent had taken part in the murder of her mother because she could no longer bear to look across the table at him. When she left the room, the police ceased questioning the respondent. The respondent's mother was immediately told that the interview with her son could not continue in her absence. In order that the interview could continue, a detective situated a chair in the hallway just outside the open door to the interview room, approximately six to eight feet from her son. From this vantage point, the respondent's mother could hear and be heard, although she could not see her son without standing in the doorway. The record supports the trial court's finding that the respondent was aware of her presence and that a portion of the interview in which inculpatory statements were made was conducted while the mother was seated in the hall.

After the respondent confessed, he and his mother were escorted to another room where the respondent reviewed and signed a statement of the facts setting forth his involvement in the death of his grandmother. The respondent was then placed under arrest.

From the trial court's factual findings, it is clear that the mother, from her vantage point in the hall, was in a position to monitor the tone of voice and the manner

in which the questions were being asked and the manner in which the respondent was responding to them. The respondent, aware of his mother's presence, could have requested her advice or intervention at any time. We conclude that under these circumstances the mother was present as required by § 46b-137 when the inculpatory statements were made.

## C

The respondent also contends that his inculpatory statements were made as a result of coercion in that they were made after he overheard his mother say he was lying, that he committed the crime and that she could not face him. The record shows that the detectives interviewing the respondent told him that they knew he was lying and that he should tell them what really happened. We are not persuaded that the suspicions of his mother and the fact that the police communicated their doubts as to the respondent's veracity are acts of coercion that would undermine the trustworthiness of the respondent's statements.

## D

The respondent argues that the motion to supress his confession was improperly denied because the questioning session was not preserved by a recording. He claims that the failure of the detective to record the reading of his rights and the interview denied him his constitutional right to due process. Our Supreme Court has addressed this argument in *State* v. *James*, 237 Conn. 390, 434, 678 A.2d 1338 (1996). In that case, the court stated that, "although we agree with the defendant that the recording of confessions and interrogations generally might be a desirable investigative practice, which is to be encouraged, we are not persuaded, in light of our history, precedent and the flexible notions of due process, that conditioning the admissibility of confessions on their recording is a requirement of due

process under the state constitution." Id. Accordingly, we reject this claim.

E

The respondent next complains that any inculpatory statements made prior to his being brought to a juvenile detention facility as required by General Statutes § 46b-133[7] should be excluded. The respondent contends that § 46b-133 mandates that he be taken to a juvenile detention facility immediately upon arrest and, because he was not, he was deprived of his due process rights. He argues that, therefore, all of his statements and the evidence obtained as a result of those statements prior to his being taken to a juvenile detention facility should be suppressed.

The relevant statute does not support his contention nor does the respondent offer any Connecticut case law interpreting the statute as he suggests. Section 46b-133 (c) provides: "Upon the arrest of any child by an

---

[7] General Statutes § 46b-133 provides in relevant part: "(a) Nothing in this part shall be construed as preventing the arrest of a child, with or without a warrant, as may be provided by law, or as preventing the issuance of warrants by judges in the manner provided by section 54-2a, except that no child shall be taken into custody on such process except on apprehension in the act, or on speedy information, or in other cases when the use of such process appears imperative. Whenever a child is arrested and charged with a crime, such child may be required to submit to the taking of his photograph, physical description and fingerprints. Notwithstanding the provisions of section 46b-124, the photograph of any child arrested for the commission of a capital felony or class A felony may be disclosed to the public.

"(b) Whenever a child is brought before a judge of the Superior Court, such judge shall immediately have the case proceeded upon as a juvenile matter. Such judge may admit such child to bail or release him in the custody of his parent or parents, his guardian or some other suitable person to appear before the Superior Court when ordered. If detention becomes necessary or desirable, the same shall be in the manner prescribed by this chapter.

"(c) Upon the arrest of any child by an officer, such officer may release him to the custody of his parent or parents, guardian or some other suitable person or agency or may immediately turn him over to a juvenile detention center. . . ."

officer, such officer may release him to the custody of his parent or parents . . . or may immediately turn him over to a juvenile detention center. . . ." "The word immediately where used in connection with human conduct, as in the case of a requirement that a certain thing shall be done immediately, is generally held to require that the act shall be performed, not instantly, but without unreasonable delay, having regard to the nature of the thing to be done." (Internal quotation marks omitted.) *Bailey* v. *Bruneau's Truck Service, Inc.*, 149 Conn. 46, 52, 175 A.2d 372 (1961). The use of the word "immediately" in § 46b-133 (c) gives guidance to the police when a juvenile is arrested. In this case, the respondent's questioning and written statement that resulted in his arrest concluded around midnight. Keeping the child overnight in a juvenile holding cell rather than transporting him from Danielson to Hartford in the early morning hours is not unreasonable and not a violation of the statute. We, therefore, cannot conclude that failure to bring the respondent to a juvenile detention facility immediately upon his arrest violated his due process rights.

F

The respondent further claims that inculpatory statements he made to a high school friend were inadmissible pursuant to General Statutes (Rev. to 1993) § 46b-137 (a) and, therefore, should have been suppressed. At the time of the respondent's arrest,[8] § 46b-137 (a) provided: "Any admission, confession or statement, written or oral, by a child shall be inadmissible in any proceeding . . . unless made by such child in the presence of his parent or parents . . . ." He contends that

---

[8] General Statutes § 46b-137 (a) was amended in 1995 to provide in pertinent part: "Any admission, confession or statement, written or oral, by a child *to a police officer or Juvenile Court official* shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission . . . unless made by such child in the presence of his parent or parents . . . ." (Emphasis added.)

the statute was broadly written and interpreted so that any admission or inculpatory statement made by a juvenile without a parent or guardian present is inadmissible. We disagree.

There is no support in the wording or the history of § 46b-137 (a) to indicate that the legislature intended this statute to extend to all statements made by a juvenile in the absence of a parent or guardian. To interpret the statute as suggested by the respondent would lead to "absurd consequences or bizarre results" contrary to the canons of statutory construction. See *In re Enrique S.*, supra, 32 Conn. App. 435. Indeed, the legislative amendment passed in 1995 supports a more restrictive reading of the statute rather than the respondent's broad interpretation. The amended statute provides that only statements or confessions made to a "police official or juvenile court official" without a parent or guardian present are inadmissible.[9] We conclude that the respondent's statements made to a high school friend are not protected under § 46b-137 (a).

## II

The respondent next contends that the trial court improperly denied his motion for discovery filed in the context of the transfer hearing. He argues that the trial court should have used its discretionary powers pursuant to Practice Book § 1058.1[10] rather than following the rules of discovery pursuant to statute.

---

[9] See footnote 8.

[10] Practice Book § 1058.1 provides: "(1) Pre-trial discovery by interrogatory, production, inspection or deposition of a person may be allowed with the permission of the court only if the information or material sought is not otherwise obtainable and upon a finding that proceedings will not be unduly delayed.

"(2) Upon its own motion or upon the request of a party, the court may limit discovery methods, and specify overall timing and sequence, provided that the parties shall be allowed a reasonable opportunity to obtain information needed for the preparation of their case. The court may grant the requested discovery, order reciprocal discovery, order appropriate sanctions

The respondent maintains that the holding in *State* v. *Clemente*, 166 Conn. 501, 353 A.2d 723 (1974), mandates that this court find General Statutes (Rev. to 1993) § 46b-127[11] and General Statutes § 54-46a (b)[12] unconstitutional. This argument is predicated on the notion that the statutes prohibit discovery and extinguish the discretion granted to the trial court in juvenile matters by Practice Book § 1058.1.[13] He further complains that the discovery prohibition in the statutes violates his right to the effective assistance of counsel, his right to confrontation and his right to have compulsory process to obtain witnesses on one's behalf in a timely fashion. We are not persuaded by these arguments.

"As a general proposition, the General Assembly lacks the power to enact rules governing procedure, and the Superior Court lacks the power to promulgate rules governing substantive rights and remedies. . . . However uncertain the line between procedure and substance sometimes may be, there is no room for doubt with regard to § 54-46a. . . . [T]he implementing procedures contained in § 54-46a [are] 'constituent parts' of

for any clear misuse of discovery or arbitrary delay or refusal to comply with a discovery request, and deny, limit, or set conditions on the requested discovery, including any protective orders under Sec. 221."

[11] See footnote 1.

[12] General Statutes § 54-46a provides in relevant part: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. . . ."

[13] See footnote 10.

the substantive rights created by amendment seventeen [of the Connecticut constitution]. That constitutional amendment, by its own terms, conferred upon the legislature, and not upon the courts, the authority to fashion 'procedures prescribed by law' for hearings to determine probable cause. In these circumstances, the validity of § 54-46a is not subject to constitutional attack as a violation of separation of powers." (Citations omitted.) *State* v. *Rollinson,* 203 Conn. 641, 650–51, 526 A.2d 1283 (1987).

In *Clemente,* our Supreme Court found General Statutes § 54-86b unconstitutional because it prohibited the exercise of judicial discretion and controlled the judiciary's inherent power of discovery. *State* v. *Clemente,* supra, 166 Conn. 516. This legislative control over the judiciary was found to violate article second of the Connecticut constitution. Id.

In the present case, the respondent challenges the constitutionality of §§ 46b-127 and 54-46a (b) because their provisions require the trial court to deny any motion for discovery in connection with a transfer hearing, except motions to discover exculpatory information. These statutory provisions do not control or limit the judiciary's discretion in discovery matters to the same extent as the statute in *Clemente* because they apply only to a preliminary stage of the proceedings and have been held constitutional. In *State* v. *Mitchell,* 200 Conn. 323, 338, 512 A.2d 140 (1986), the court concluded that "§ 54-46a (b) is constitutional when read in conjunction with the prosecution's on-going constitutional duty to disclose exculpatory material to a criminal defendant independent of a defense motion or request." The *Mitchell* court stated further that, "[s]ince the adversarial probable cause hearing at issue here is an essential part of a defendant's criminal prosecution, the constitutional obligation to disclose exculpatory material attaches at that time. Consequently, § 54-46a (b)'s ban on defense discovery motions did not impair

the defendant's constitutional rights." Id. Section § 46b-127 similarly grants the right to discovery of exculpatory information, and the rationale of *Mitchell* would apply. Thus, the respondent's claim that the statutes are unconstitutional must fail. We find that the trial court properly denied his motion for discovery that exceeded the bounds of exculpatory information.

## III

The respondent's final claim is that the trial court improperly denied his motion to dismiss the transfer motion.[14] The respondent claims that, as a matter of law, the transfer motion should have been dismissed because the transfer hearing was held more than sixty days after the motion for the transfer was filed in violation of § 54-46a.[15] The respondent contends that because § 46b-127 provides that the procedures set forth in § 54-46a apply to juvenile transfer hearings, the legislature intended that certain specific procedural provisions of § 54-46a apply. In particular, the respondent argues that because § 54-46a allows a criminal defendant to move to dismiss if the probable cause hearing commences more than sixty days after the filing of the complaint or information, a juvenile should also have this right. We disagree.

As a preliminary matter, our Supreme Court has stated that prior to the completion of the transfer, a juvenile is not yet a criminal defendant and, therefore, § 54-46a requiring a hearing within sixty days cannot apply. "We have characterized an appeal from a transfer order as a juvenile rather than a criminal matter for the purposes of assessing the relevant procedural rules on appeal. . . . Thus, under our statutory framework, the juvenile whose transfer has been ordered stands poised

---

[14] There is no statutory authority to grant the respondent the relief he requests.

[15] See footnote 12.

at the doors of our criminal justice system, but not yet within them." (Citation omitted; internal quotation marks omitted.) *In re Prudencio O.*, 229 Conn. 691, 698, 643 A.2d 265 (1994).

"The language of [§ 54-46a][16] makes it plain that it applies only to criminal prosecutions, and is triggered only by the filing of a charge, by information or complaint, that places a defendant at risk of punishment by death or life imprisonment. A child charged under § 46b-120, by contrast, may not 'stand trial' or 'be prosecuted for an offense before the superior court' until *effectuation of a transfer* to the regular criminal docket. General Statutes §§ 46b-127 and 46b-145." (Emphasis in original.) *In re Prudencio O.*, supra, 229 Conn. 698–99.

Accordingly, we conclude that the requirements of § 54-46a are not applicable to the respondent because his transfer to the regular criminal docket has not yet been effectuated and an information has not been filed. The trial court properly denied his motion to dismiss the transfer motion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] General Statutes § 54-46a provides in relevant part: "(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. . . ."