STATE OF CONNECTICUT *v.* BRIAN NIBLACK
(13968)

SHEA, CALLAHAN, GLASS, BORDEN and F. X. HENNESSY, Js.

Argued April 26—decision released August 20, 1991

*Gregory T. D'Auria,* special public defender, with whom, on the brief, was *James W. Bergenn,* special public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

F. X. HENNESSY, J. The defendant, Brian Niblack, was charged in an original information with the crime of murder in violation of General Statutes § 53a-54a,[1] and, in an additional information, with the crimes of escape from custody in violation of General Statutes § 53a-171, and kidnapping in violation of General Statutes §§ 53a-92 (a) (2) (B) and 53a-8. On September 15, 1988, the trial court, *Quinn, J.,* held a hearing pursuant to article first, § 8 of the Connecticut constitution as amended,[2] and General Statutes

---

[1] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] The constitution of Connecticut, article first, § 8 as amended by article seventeen, provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

§ 54-46a[3] to determine whether there was probable cause to prosecute the defendant for the crime of murder. Probable cause to prosecute was found, and the defendant pleaded not guilty to the murder charge. On November 8, 1988, the defendant successfully moved to vacate the probable cause determination because the exculpatory information mailed by the state was not received by defense counsel until two days after the conclusion of the probable cause hearing. A new hear-

---

[3] "[General Statutes] Sec. 54-46a. PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

ing date of November 15, 1988, was set by the court. At the second hearing, the trial court, *Corradino, J.,* found probable cause. The defendant, thereafter, pleaded not guilty and, while awaiting trial, entered into plea negotiations with the state. Following those negotiations, the defendant pleaded guilty on October 27, 1989, to the charges of murder and escape from custody pursuant to the doctrine contained in *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). He also pleaded guilty on December 5, 1989, to two unrelated counts of robbery.[4] The court imposed an aggregate fifty year prison sentence for all charges in accordance with a plea agreement. The defendant now appeals to this court. We affirm the judgments of the trial court.

The facts in this case, as summarized by the assistant state's attorney at the defendant's plea canvass, are as follows. On the morning of June 11, 1987, Dean Allen, the son of the murder victim, James Allen, had become involved in a fight with Harvey Ward on Eastern Circle in New Haven. Later in the day, Ward telephoned the defendant, who did not reside on Eastern Circle, to come to the area. The defendant, Ward and two other individuals arrived at Eastern Circle and found a fight taking place between Dean Allen and Derrick Gillian. The victim was attempting to break up the fight when the defendant displayed a gun, which he fired several times into the air. The victim told the defendant to put the gun away and, as the victim stepped toward him, the defendant leveled the gun and fired one shot striking the victim in the heart. The victim died as a result of this wound.

In this appeal, the defendant claims that he was denied a valid probable cause hearing, thereby depriving the trial court of jurisdiction over him and render-

---

[4] The assistant state's attorney nolled the kidnapping charge on October 27, 1989.

ing all subsequent proceedings moot. He claims that the probable cause hearing was invalid because the trial court: (1) denied his request for a copy of the statement given to the New Haven police by Raymond Wallace, the state's sole witness at the probable cause hearing; (2) failed to hold a probable cause hearing within sixty days from the issuance of the information as required by General Statutes § 54-46a (b);[5] and (3) denied him the opportunity to present evidence of an affirmative defense that would have negated a finding of intent, which is a necessary element of the crime of murder. The defendant raises the additional claim that the trial court, *Damiani, J.,* incorrectly accepted his plea of guilty, contending that it was not made knowingly, intelligently and voluntarily for three reasons: (1) the trial court's active participation in the plea process coerced his plea; (2) no factual basis was established to support a finding that he had acted with intent to commit murder; and (3) the trial court failed to follow through on a promise made to him in connection with his plea bargain.

I

The defendant first contends that because he was denied a valid probable cause hearing, the trial court lacked jurisdiction over his person, thereby invalidating his plea of guilty under the *Alford* doctrine. The state argues, however, that the defendant's unconditional guilty plea constitutes a waiver of his subsequent challenge to the trial court's in personam jurisdiction. We agree.

In *State* v. *Mitchell,* 200 Conn. 323, 332, 512 A.2d 140 (1986), we recognized that an adversarial probable cause hearing is a critical stage in the prosecution of a defendant and held that "under the express terms of article first, § 8, of our state constitution as amended, [a valid probable cause hearing] is a jurisdictional

---

[5] See footnote 3, supra.

prerequisite to continuing prosecution." Acknowledging that § 54-46a expressly allowed for the waiver of a preliminary hearing to determine probable cause, we explained in *State* v. *John,* 210 Conn. 652, 665 n.8, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), that our reference to a "jurisdictional prerequisite" in *State* v. *Mitchell,* supra, "pertains, not to subject matter jurisdiction, but only to jurisdiction over the person of the defendant." See *State* v. *Boyd,* 214 Conn. 132, 136, 570 A.2d 1125 (1990); *State* v. *McPhail,* 213 Conn. 161, 170, 567 A.2d 812 (1989). We therefore concluded in *State* v. *John,* supra, that defects at a probable cause hearing relate to jurisdiction over the person of the defendant and are waived if not seasonably raised.

The defendant's chief argument in support of his claim that he has not waived his right to challenge the validity of his probable cause hearing is that the relatively new mandate[6] in our state constitution that there be a valid probable cause hearing prior to the prosecution of an individual charged with a crime punishable by death or life imprisonment should remove his case from the application of established principles of waiver of defects related to in personam jurisdiction. We are not persuaded by this argument.

"As a general rule, an *unconditional* plea of guilty . . . intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. . . . Therefore, only those issues fully disclosed in the record which relate either to the exercise of jurisdiction by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable

---

[6] Amendment seventeen to article first, § 8, of the Connecticut constitution was approved by the electorate on November 2, 1982, and certified by the secretary of the state on November 24, 1982.

after a plea of guilty . . . ." (Emphasis in original.) *State* v. *Madera,* 198 Conn. 92, 97–98, 503 A.2d 136 (1985); see *State* v. *Gilnite,* 202 Conn. 369, 374 n.4, 521 A.2d 547 (1987); *Buckley* v. *Warden,* 177 Conn. 538, 542–43, 418 A.2d 913 (1979). Although we noted in *State* v. *Madera,* supra, 98 n.6, that a guilty plea, whether conditional or unconditional, does not preclude review of "jurisdictional defects," we explained that those defects have been characterized as those that would prevent a trial from occurring in the first place, as when the court lacks jurisdiction over the case.

When we stated in *State* v. *John,* supra, 665 n.8, that "like other defects relating to jurisdiction of the person, any infirmity in the evidence presented at a probable cause hearing is deemed to be waived if not seasonably raised," we did not conclude that the mandate in our state constitution that there be a valid probable cause hearing precluded such a waiver. Likewise, we are not persuaded that a challenge based on this constitutional mandate differs so greatly from any other constitutional challenge to a pretrial proceeding so as to require this court to deviate from the principle that an unconditional plea of guilty, intelligently and voluntarily made, bars the later assertion of a constitutional challenge to a pretrial proceeding. *State* v. *Madera,* supra.

We therefore conclude that the defendant's entry of a guilty plea under the *Alford* doctrine constituted a waiver of his three claims challenging the validity of his probable cause hearing.

## II

The defendant's claim that the trial court, *Damiani, J.,* incorrectly accepted his plea of guilty because it was not made knowingly, intelligently and voluntarily is raised for the first time in this appeal. "Only in most exceptional circumstances can and will this court con-

sider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973).

In *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), we articulated guidelines for the application of the standard of review for errors not preserved at trial set forth in *State* v. *Evans,* supra. We held that a defendant can prevail on such a claim "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra, 239–40.

The state contends that review of this claim, not raised below, is precluded because none of the reasons offered by the defendant in support of his claim implicate constitutional rights and therefore fail to satisfy the second condition articulated in *State* v. *Golding,* supra. We agree.

## A

If a defendant's guilty plea is not made knowingly and voluntarily, it has been obtained in violation of due process and is therefore void. *Paulsen* v. *Manson,* 203 Conn. 484, 489, 525 A.2d 1315 (1987).

The defendant contends that the record supports his claim that his guilty plea was involuntary because the trial court actively participated in the plea bargaining process and exerted pressure upon him to plead guilty. In support of his allegation of pressure, the defendant

directs our attention to a statement made by the court on the day of his guilty plea when he requested, through counsel, a one week continuance to think about the plea. In denying this request, the court stated: "We've discussed it at great length at pretrial and I'm not going to hold it open . . . . If he doesn't want the offer, I don't want him to feel he's being pressured. He can have his trial and if he's acquitted I wish him a lot of luck, but I'm not going to have any games played with me."

We recognize that our trial courts have a responsibility to administer their resources in a manner that allows all defendants to have their cases reach closure. The defendants cannot be allowed to dictate the pace at which criminal matters shall proceed. The court's statement above does not indicate that it interfered with the defendant's right to trial or with his ability to confer with his attorney in order to make a decision on a proposed plea bargain that had been under consideration for a period of time. We conclude therefore that the statement by the court, which was not objected to at the time it was made, does not indicate interference with the defendant's right such that his guilty pleas must be deemed coerced and his due process rights thus violated.

In support of his allegation that the court actively participated in the plea bargaining process, the defendant points to the following colloquy between the court and the assistant state's attorney. After the plea canvass, the court asked the assistant state's attorney: "Is your recommendation fifty years or is my sentence I indicated fifty years?" The assistant state's attorney answered: "That's yours." The court then stated: "I've indicated to both the state and to your lawyer that I would impose a sentence of fifty years."

The defendant also claims that this statement by the court, along with the statement, "we've discussed it at great length at pretrial," demonstrates the active participation of the court in the plea bargaining process, a participation criticized by this court in *State* v. *Fullwood,* 194 Conn. 573, 484 A.2d 435 (1984). In that case, we stated that "[a]lthough we have not adopted the federal rule flatly prohibiting trial judges from any participation in plea bargaining . . . our rules of practice expressly authorized the trial judge to do no more than to indicate whether a proposed agreed disposition may be accepted or rejected. . . . Active involvement by trial judges in plea negotiations has frequently been criticized." Id., 580–81. Our Appellate Court has held that "[t]he prohibition against trial judges participating in plea negotiations is not, in itself, a matter of constitutional law; *Flores* v. *Estelle,* 578 F.2d 80, 85 (5th Cir. 1978), cert. denied, 440 U.S. 923, 99 S. Ct. 1253, 59 L. Ed. 2d 477 (1979); provided that the plea is not judicially coerced and remains voluntary. Id." *State* v. *Safford,* 22 Conn. App. 531, 537, 578 A.2d 152, cert. denied, 216 Conn. 823, 581 A.2d 1057 (1990).

The defendant in this case chose not to go to trial but rather to accept the conditions of a plea agreement and to plead guilty. The plea negotiations involved an assistant state's attorney, defense counsel and eventually a judge who assisted the adversaries in reaching an agreement, which resulted in the court's recommendation of an aggregate sentence of fifty years on all charges. The judge was responsible for conducting plea negotiations and, if an agreement was reached, for holding a plea and sentencing hearing. If negotiations were not successful, however, a judge who was not involved in the plea negotiations would have presided at trial and pronounced sentence if the defendant were found guilty. We approve of the procedure followed in reaching the plea agreement.

We conclude that the available record fails to indicate that the participation of the judge who presided over and supervised the challenged plea negotiations coerced a plea from the defendant. Accordingly, this unpreserved claim is not of constitutional magnitude and will not be reviewed further. *State* v. *Golding,* supra.

## B

The second reason offered by the defendant in support of his claim that his guilty plea was involuntary is that the court accepted his plea without a factual basis. He contends that the facts recited by the assistant state's attorney at the plea canvass included no support for a finding that the defendant had acted with the intent to cause death, an essential element of the crime of murder, and that without such a factual basis in the record, the trial court could not have correctly concluded that his plea was made knowingly and voluntarily.[7] Noteworthy, again, is the defendant's failure to file a motion to withdraw his plea pursuant to Practice Book § 721 (5) for lack of a factual basis.[8]

In *Paulsen* v. *Manson,* 203 Conn. 484, 490–91, 525 A.2d 1315 (1987), we held that, in light of federal case law clarifying due process requirements attendant to guilty pleas, our state courts are under no constitutionally imposed duty to establish a factual basis for a guilty plea prior to its acceptance unless the judge is put on notice that there may be some need for such an inquiry.

The defendant contends that his plea of guilty under the *Alford* doctrine, which was not an admission that

---

[7] The defendant maintained throughout these proceedings that he never aimed the gun at any specific person but rather fired wildly as he ran from the crowd that threatened him.

[8] Practice Book § 721 provides in pertinent part: "The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows . . . (5) There was no factual basis for the plea . . . ."

he had committed the crime, was sufficient to put the court on notice that a factual basis for his plea had to be established. While we disagree with this argument, further discussion is unnecessary, for we conclude that the record does provide a factual basis for a finding that the defendant acted with intent to cause death.

Included in the assistant state's attorney's factual recitation at the plea canvass is the following: "Mr. Niblack at that point pulled a gun out of his sweatshirt, fired it several times in the air. Mr. Allen said something to the effect of put the gun away, it's dangerous to have it. As he [Allen] took a step toward Mr. Niblack, Mr. Niblack leveled the gun and fired one shot at Mr. Allen which struck him directly in the heart. He subsequently died shortly thereafter."

We conclude that from the defendant's conduct, as reported by the assistant state's attorney, the trial court could reasonably have found that the requisite element of intent existed. The defendant's claim that his guilty plea was involuntary because the trial court incorrectly accepted that plea without a factual basis is, therefore, without merit.

C

The defendant's final reason for claiming that his plea was involuntary and therefore should not have been accepted by the trial court is that the court did not fulfill a promise made to him in connection with his plea bargain.

During the plea bargaining process, the court agreed to recommend to the commissioner of correction that the defendant be granted housing arrangements that would address the defendant's concern for his wellbeing. The court stated that this agreement, which the defendant has characterized as a promise, would be

effectuated by having the clerk, on the day of the defendant's sentencing, note the recommendation on the mittimus.

At the sentencing hearing, when the court was requested by defense counsel to honor its agreement, the court instructed defense counsel to provide a letter outlining the recommendation, which would be attached to the mittimus for consideration by the commissioner of correction. In response, defense counsel stated: "Judge, I do have such a letter. I'll attach it."

" 'When a guilty plea is induced by promises arising out of a plea bargaining agreement, fairness requires that such promises be fulfilled by the state. . . . The same concept of fairness ordinarily impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea.' *State* v. *Littlejohn,* 199 Conn. 631, 644, 508 A.2d 1376 (1986)." *State* v. *Reid,* 204 Conn. 52, 58–59, 526 A.2d 528 (1987). The defendant contends that the court, during plea negotiations and at the plea canvass, explicitly promised the defendant the housing arrangements he sought to induce his guilty plea, and that by merely attaching a letter from defense counsel to the mittimus, the trial court deviated from that promise and thus should have given the defendant the opportunity to withdraw his plea.

We find the defendant's argument flawed in several respects. First, no attempt was made to preserve this issue for appeal either by an objection to the method chosen by the court at sentencing to honor the agreement made during plea negotiations and at the plea canvass or by a request to withdraw the plea. Second, the court had no authority to require the commissioner of correction to take any particular course of action with regard to the housing of inmates and could not so prom-

ise. Finally, the record does not support the defendant's contention that the court's statements made at the plea canvass constituted an unequivocal promise that the housing arrangements he sought would be carried out. If a promise had been made by the court, it was a promise to recommend to the commissioner of correction the housing arrangements the defendant sought, which recommendation was made by attaching defense counsel's letter to the mittimus. That defense counsel had prepared and brought to the sentencing hearing a letter to the commissioner of correction regarding the defendant's desired housing arrangements strongly suggests that the court's approach to this matter was known by counsel before the hearing and therefore worked no surprise to the disadvantage of the defendant.

Because the trial court did not fail to follow through on a promise made to induce the defendant to plead guilty, no further review of this claim of the defendant is necessary.

The facts in this case do not persuade us that there was a violation of due process, that the spirit of the plea bargain was violated, or that the voluntariness of the plea was so compromised that this court should order that the defendant be allowed to withdraw his plea.

The judgments are affirmed.

In this opinion the other justices concurred.