[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision on Defendant Juvenile's Motion to Reopen
The question before this Court is whether in a juvenile delinquency proceeding the State of Connecticut can unilaterally modify the conditions of a plea agreement. Under the circumstances of this case, because the juvenile detrimentally relied upon the agreement, public confidence in the integrity of the juvenile justice system requires immediate action.
I. Procedural and Factual History
On June 9, 2000 the juvenile defendant Israel S. was arrested and charged with a series of narcotics, larceny and motor vehicle offenses. He was immediately remanded to the custody of the State of Connecticut and placed in the New Haven Detention Center where he remained for two months.
Shortly after the defendant's arrest the State, through the Office of Juvenile Probation, contacted the Department of Children and Families (the department). The purpose of this communication was to initiate a search for an appropriate juvenile residential facility for this delinquent child.[1] The department assessed available residential facilities and eventually allowed the defendant to apply for residential placement at the Haddam Hills Academy (Haddam Hills). A position in that facility became available in January 2001.[2]
On January 18, 2001, pursuant to a negotiated plea agreement, the CT Page 7339-b defendant pleaded guilty to possession of a narcotic substance with intent to sell; Connecticut General Statutes 21a-277 (a);[3] and breach of peace; Connecticut General Statutes 53a-18.[4] As a result of his plea, the defendant was committed to the custody of the department for a period not to exceed eighteen months, with direct placement at Haddam Hills. All other charges were nolled. The defendant arrived at Haddam Hills the following day.
On May 14, 2001 defendant's counsel filed the instant Motion to Re-Open. Counsel alleged that on May 11, 2001 the department removed the defendant from Haddam Hills and placed him in the Blue Hills Residential Treatment Center (Blue Hills). Counsel further alleged that the department did not notify the defendant, his parents, counsel of record or the Court prior to the move. Finally, counsel alleged that said transfer "resulted in Defendant being inappropriately placed in a treatment facility where his health and safety are in jeopardy."
The court scheduled this motion for a hearing on May 16, 2001. At the hearing there was no evidence that the department's actions were justified by exigent circumstances.[5] There was no evidence that the defendant was afforded a hearing prior to his transfer to this mental health facility.[6] Based upon the information presented, this Court granted the defendant's Motion to Re-Open and ordered that the State comply with the plea agreement[7] The matter was set down for further in court review on May 25, 2001.[8]
II. Legal Analysis
There is no doubt that properly executed plea agreements are an essential part of the administration of justice. Santobello v. New York,404 U.S. 257, 260-61 (1971). Further, there is no question that valid plea agreements, once accepted by a trial court, are binding. "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." State v. Andrews, 253 Conn. 497,504, ___ A.2d ___ (2000) (internal quotation marks and citations omitted.) The constitutional standards governing plea agreements apply to juvenile proceedings. In re Jason C., 255 Conn. 565, 576 ___ A.2d ___ (2001).
The issue before the court is whether the defendant's guilty plea was a CT Page 7339-c voluntary act.[9] Although there is no requirement that the defendant be advised of every possible consequence of a plea, State v. Gilnite,202 Conn. 369, 383, 521 A.2d 547 (1987), "[i]n order to make a knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including "all relevant information concerning the sentence." State v. Collins, 176 Conn. 7, 9, 404 A.2d 871
(1978). A defendant also must be aware of the actual value of any commitments made to him by the court. State v. Garvin, 242 Conn. 296,310, 699 A.2d 921 (1997). In this case the state, through the department, made promises to the defendant concerning the conditions of his juvenile commitment. There was a specific assurance that if the defendant waived his constitutional rights and pleaded guilty, he would be sent to Haddam Hills. "When a guilty plea is induced by promises arising out of a plea bargaining arrangement, fairness requires that such promises be fulfilled by the state. . . . The same concept of fairness ordinarily impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea." State v. Niblack, 220 Conn. 270, 283, 596 A.2d 407 (1991);Medley v. Commissioner of Correction, 35 Conn. App. 374, 377, 646 A.2d 242
(1994).
In State v. Nelson, 23 Conn. App. 215, 579 A.2d 1104 (1990), the Appellate Court explained the state's obligations in the plea bargaining process. The Court commented that plea bargaining, an "essential tool of the criminal justice system" would be meaningless "if the state's performance of the agreement is contrary to the reasonable expectations of the defendant." State v. Nelson, 23 Conn. App. at 218.
Simply stated, if the state makes promises to the defendant in order to induce a guilty plea, those promises must be fulfilled. Santobello v. NewYork, 404 U.S. at 262. Here there is no dispute concerning the terms of the plea agreement. The defendant was committed to the department for eighteen months, with the location of the commitment Haddam Hills. If the state reserved the right to transfer the defendant unilaterally, that understanding should have been placed on the record. Instead the state remained silent. This silence strongly implies that it shared the defendant's interpretation of the plea agreement. State v. Nelson,23 Conn. App. at 219.
The department cannot rely on the argument that the commitment was for rehabilitative purposes. The specific terms of the commitment were not "inconsequential adjuncts of the sentence imposed that can be ignored or, like castor oil, be considered to have been administered for the defendant's own good." State v. Reid, 204 Conn. 52, 55, 526 A.2d 528
CT Page 7339-d (1987). In the present case, the department was intimately involved with the ultimate decision to place the defendant at Haddam Hills. The department's approval was needed prior to the plea agreement.
The state's sudden "inability to comply with this agreement constitutes a failure of consideration in the plea bargaining process." State v.Madera, 198 Conn. 92, 107, 503 A.2d 136 (1985).
The resolution of this matter will not be easy. As noted by the United States Supreme Court, "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned."Blackledge v. Allison, 431 U.S. 63, 70 (1977). This presupposes, however, that all parties will fulfill their promises. Attorneys for various agencies within the state "have the burden of "letting the left hand know what the right hand is doing' or has done." Santobello v. NewYork, 404 U.S. at 262. "That the breach of agreement was inadvertent does not lessen its impact." Santobello v. New York, 404 U.S. at 262.
At the next hearing, all parties should be prepared to argue an appropriate disposition. Options include specific performance, resentencing, withdrawal of the defendant's plea, or any other appropriate relief. The primary consideration should be fairness for all parties concerned.
 Julia DiCocco Dewey, Judge May 21, 2001