[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 27, 1989, in the Judicial District of New Haven, the petitioner pleaded guilty under Alford[1] in docket CR6-292247 to one count of Murder in violation of General Statutes § 53a-54 (a) and in docket CR6-305403 to one count of Escape from Custody in violation of General Statutes § 53a-171. Resp't Ex. 7, at 4-5. The Alford guilty pleas "were entered pursuant to an agreement that the petitioner would receive concurrent sentences on the two robbery charges pending against him in the Ansonia/Milford Judicial District, and the total sentence imposed on the murder, escape and robbery charges would not exceed fifty years." Am. Pet., at 2; Resp't Ex. 7, at 8-9.
On December 5, 1989, in the Judicial District of Ansonia/Milford, the petitioner pleaded guilty in docket CR5-78736 to one count of Robbery in the First Degree in violation of General Statutes § 53a-134a (4) and in docket CR5-78723 to one count of Robbery in the First in violation of CT Page 9626 General Statutes § 53a-134a (4). Resp't Ex. 16, at 2-4. "The petitioner's pleas on December 5, 1989 were entered pursuant to a plea agreement that the petitioner would receive concurrent fifteen year sentences on the robbery convictions, to be served concurrently with the sentences for the murder and escape convictions in the New Haven cases." Am. Pet., at 3; Resp't Ex. 16, at 8-9.
The two Ansonia/Milford cases were transferred to New Haven. "On December 15, 1989, the petitioner was sentenced . . . to a total effective sentence of fifty years, . . . composed of the following individual sentences:
a. fifty years incarceration on the murder conviction;
 b. five years incarceration on the escape conviction, concurrent with the murder sentence;
 c. . . . fifteen years incarceration on each robbery conviction, to be served concurrently [with each other and] with the murder and escape sentences." Am. Pet., at 4; Resp't Ex. 8, at 12; see also
Mittimus attached to Resp't Return.
The petitioner currently is in the custody of the Commissioner of Correction as a result of these convictions.
The petitioner filed a pro se petition for a writ of habeas corpus on July 2, 1993. On December 12, 1996, the Court granted a motion to consolidate CV93-1731 with the present petition. An amended petition was filed on December 4, 1996. The respondent's return to the petition was filed December 12, 1996, and raised the defense that the petitioner failed to allege and demonstrate both the cause and prejudice arising from his failure to raise his claims both in the trial court and on appeal. On January 6, 1997, the petitioner filed a reply to the return denying any failure by the petitioner to allege and demonstrate cause and prejudice for the procedural default at the trial court and appellate levels. The petitioner specifically alleges that the causes for any procedural default are: incompetent representation by counsel; ineffective assistance of counsel; governmental interference with the petitioner's efforts to raise the issues; and prosecutorial misconduct which hinders the petitioner's efforts to raise the issues. Pet'r Reply to Return, at 2. As to the prejudice, the petitioner notes that he "was actually prejudiced as a result of the causes for any procedural default." Id. The matter was tried before this Court over the course of three days: March 14, April 30 and May 30, 2002. CT Page 9627
The amended petition claims can be summarized into three fundamental areas:
 1. Defense counsel did not adequately advise the petitioner concerning the options available to the petitioner throughout the course of counsel's representation of the petitioner. As a result of defense counsel's failure to adequately communicate with the petitioner during the course of the representation, the petitioner did not appreciate the value of the plea agreement under which he entered his pleas. Defense counsel did not ensure that the petitioner had a sufficient understanding of the law in relation to the facts. Together, these deficiencies by defense counsel failed to ensure that the petitioner's pleas were knowing, intelligent and voluntary.
2. Defense counsel did not adequately research the law concerning the effect of the petitioner's pleas on his right to appeal issues concerning the probable cause hearing. Defense counsel did not adequately advise the petitioner concerning the effect of the petitioner's pleas on his right to appeal issues concerning the probable cause hearing. Defense counsel advised the petitioner incorrectly concerning the effect of the petitioner's pleas on his right to appeal issues concerning the probable cause hearing. As the result of defense counsel's communications, the petitioner was misled as to the likely outcome of filing an appeal.
 3. Defense counsel did not adequately advise the petitioner concerning the option of entering a conditional plea of nolo contendere.
The petitioner further alleges that counsel's acts and omissions fell below the standard of reasonable competence in the criminal law and that but for trial counsel's errors and omissions, it is reasonably probable that both the result of the proceedings would have been different and that the petitioner would not have entered his pleas of guilty. Am. Pet., at 5.
"The object of an ineffectiveness claim is not to grade counsel's performance. . . . Court's should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire CT Page 9628 criminal justice system suffers as a result." Strickland v. Washington,466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied,467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction . . . has two components. First, the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id., at 688.
"Second, the petitioner must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id., at 687.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a CT Page 9629 trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal citations and quotations omitted.) Id., 156-7.
"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [a particular] order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."Strickland v. Washington, supra, 466 U.S. 697.
Because the respondent has raised the defense of procedural default as to the petitioner's claims, this Court will first address whether or not the petitioner has procedurally defaulted. The Supreme Court in Johnsonv. Commissioner of Correction, 218 Conn. 403, 409, 589 A.2d 1214 (1991), held that the applicable "standard for reviewability in a habeas corpus proceeding of constitutional claims not adequately preserved at trial because of procedural default" should be the Wainright standard of "cause [for the failure to challenge] and [actual] prejudice" instead of the Fayv. Noia intentional bypass standard. The cause and prejudice must be shown conjunctively. Id., at 419. This standard was extended so that the cause and prejudice standard would also "be employed to determine the reviewability of habeas claims that were not properly pursued on direct appeal." Jackson v. Commissioner of Correction, 227 Conn. 124, 132,629 A.2d 413 (1993).
"[H]abeas corpus proceedings are not an additional forum for asserting claims that should be properly raised at trial or in a direct appeal."Tillman v. Commissioner of Correction, 54 Conn. App. 749, 755,738 A.2d 208, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999). "The cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance. Therefore, attorney error short of ineffective assistance of counsel does not CT Page 9630 adequately excuse compliance with our rules of trial and appellate procedure." (Internal citations and quotations omitted.) Cobham v.Commissioner of Correction, 258 Conn. 30, 40, 779 A.2d 80 (2001).
"The `special problems' regarding procedural defaults . . . militate in favor of [the] adoption of one standard by which to measure procedural defaults occurring at trial or on appeal. As the United States Supreme Court has noted in specifically adopting the cause and prejudice standard to analyze procedural defaults on direct appeal: A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. Such rules afford the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. This type of rule promotes not only the accuracy of those decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case." (Internal quotation marks omitted.) Jackson v.Commissioner of Correction, supra, 227 Conn. 133-4, quoting Murray v.Carrier, 477 U.S. 478, 490-91, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).
"A claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. State v. Leecan, 198 Conn. 517, 541, 504 A.2d 480, cert. denied,476 U.S. 1184, 106 S.Ct. 2922, 91 L.Ed.2d 550 (1986). Section 39-27 [(4)] of the Practice Book,[2] however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea. A defendant must satisfy two requirements, which are a "finely tuned" version of the Strickland standard, to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. State v.Irala, 68 Conn. App. 499, 524-5, 791 A.2d 697, cert. denied, 260 Conn. 923, ___ A.2d ___ (2002). First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law. Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance." (Internal citations and quotation marks omitted.) State v. Gray, 63 Conn. App. 151, 161-2,772 A.2d 747, cert. denied, 256 Conn. 934, 772 A.2d 747 (2001); see alsoState v. Nelson, 67 Conn. App. 168, 177, 786 A.2d 1171 (2001).
"The [petitioner in this matter] was charged in an original information with the crime of murder in violation of General Statutes 53a-54a, and, in an additional information, with the crimes of escape from custody in violation of General Statutes 53a-171, and kidnapping in violation of General Statutes 53a-92 (a)(2)(B) and 53a-8. On September 15, 1988, the CT Page 9631 trial court, Quinn, J., held a hearing pursuant to article first, 8 of the Connecticut constitution as amended, and General Statutes 54-46a to determine whether there was probable cause to prosecute the defendant for the crime of murder. Probable cause to prosecute was found, and the defendant pleaded not guilty to the murder charge. On November 8, 1988, the defendant successfully moved to vacate the probable cause determination because the exculpatory information mailed by the state was not received by defense counsel until two days after the conclusion of the probable cause hearing. A new hearing date of November 15, 1988, was set by the court. At the second hearing, the trial court, Corradino, J., found probable cause. The defendant, thereafter, pleaded not guilty and, while awaiting trial, entered into plea negotiations with the state. Following those negotiations, the defendant pleaded guilty on October 27, 1989, to the charges of murder and escape from custody pursuant to the doctrine contained in North Carolina v. Alford. . . . He also pleaded guilty on December 5, 1989, to two unrelated counts of robbery. The court imposed an aggregate fifty year prison sentence for all charges in accordance with a plea agreement." State v. Niblack, 220 Conn. 270,272-4, 596 A.2d 407 (1991).
"In [his] appeal, the [petitioner] claim[ed] that he was denied a valid probable cause hearing, thereby depriving the trial court of jurisdiction over him and rendering all subsequent proceedings moot. He claim[ed] that the probable cause hearing was invalid because the trial court: (1) denied his request for a copy of the statement given to the New Haven police by Raymond Wallace, the state's sole witness at the probable cause hearing; (2) failed to hold a probable cause hearing within sixty days from the issuance of the information as required by General Statutes 54-46a
(b); and (3) denied him the opportunity to present evidence of an affirmative defense that would have negated a finding of intent, which is a necessary element of the crime of murder. The defendant raise[d] the additional claim that the trial court, Damiani, J., incorrectly accepted his plea of guilty, contending that it was not made knowingly, intelligently and voluntarily for three reasons: (1) the trial court's active participation in the plea process coerced his plea; (2) no factual basis was established to support a finding that he had acted with intent to commit murder; and (3) the trial court failed to follow through on a promise made to him in connection with his plea bargain." Id., at 274-5. The Supreme Court affirmed the trial court's judgments.
As previously indicated, the petitioner specifically alleges that the causes for any procedural default are: incompetent representation by counsel; ineffective assistance of counsel; governmental interference with the petitioner's efforts to raise the issues; and prosecutorial misconduct which hinders the petitioner's efforts to raise the issues. Pet'r Reply to Return, at 2. The record before this Court is devoid of CT Page 9632 any evidence in support of the contention that governmental interference and prosecutorial misconduct hindered the petitioner's efforts to raise his issues. As to the petitioner's claim that cause for any procedural default is ineffective assistance of counsel, a claim that incorporates incompetent representation by counsel, the burden is on the petitioner to affirmatively prove both that ineffective assistance of counsel caused the failure to challenge the guilty plea at the trial and appellate levels and that he was prejudiced thereby.
Practice Book § 39-27(4) specifies the grounds for allowing a defendant to withdraw a guilty plea after acceptance if the plea resulted from the denial of effective assistance of counsel. § 39-27, however, must be viewed in conjunction with § 39-26, which allows for the withdrawal of guilty or nob contendere pleas "as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed." "When a defendant moves to withdraw a guilty plea after it has been accepted but before sentencing, a court is obligated to allow the motion upon proof of one of the grounds provided in Practice Book § 39-27." Baillargeon v. Commissioner of Correction,67 Conn. App. 716, 731, 789 A.2d 1046 (2002).
"Our courts have held that because Practice Book § 39-26 precludes a defendant from withdrawing his plea after the conclusion of sentencing, the failure of the defendant to make a motion to withdraw his plea before the conclusion of the proceeding at which the sentence was imposed ordinarily precludes review of claimed infirmities in the acceptance of a plea. There are, however, two exceptions to that rule. First, review of the claim is allowable if the legislature grants the defendant the right to withdraw his plea after the time of sentencing. Second, as with unpreserved claims raised on appeal after a trial, review of an unpreserved claim involving a guilty plea is allowable in cases in which the defendant asserts a constitutional claim that satisfies the requirements of State v. Golding, 213 Conn. 233, 239-40, 567 A.2d 823
(1989)." (Internal citations and quotation marks omitted.) State v.Webb, 62 Conn. App. 805, 772 A.2d 690 (2001).
In Webb, the defendant "claimed that his plea was not entered voluntarily and knowingly, thereby violating his rights to due process."Id., at 809. Because the defendant in Webb filed a motion to withdraw his guilty plea approximately seventeen months after his sentencing, the Appellate Court first had to determine whether the claims were reviewable under one of the two exceptions. "The defendant's . . . unpreserved claims regarding whether he entered his guilty plea knowingly and CT Page 9633 voluntarily do not involve legislative authority allowing defendants to withdraw their guilty pleas beyond the time of sentencing. Instead, those unpreserved claims involve requirements of [Golding]." Id., at 812. The Appellate Court declined to review the unpreserved claims because the defendant had not requested that the court review those claims underGolding. Id., at 812-3.
The petitioner in this matter addressed the court on October 16, 1989, approximately one week prior to entering the New Haven guilty pleas. Resp't Ex. 6 (Tr., Oct. 16, 1989), at 2. The petitioner made an oral motion to dismiss Attorney Blessinger premised on the claims that the attorney/client relationship had broken down, that there was a breakdown in communications, and that he and Attorney Blessinger differed greatly on an issue the petitioner wanted to raise which the petitioner felt was pertinent to his defense. Id. The petitioner also claimed that Attorney Blessinger had failed to investigate the matter. Id., at 3. The petitioner advised the court that the issue he wanted Attorney Blessinger to pursue was an interlocutory appeal challenging violations that the petitioner alleged to have occurred at the second probable cause hearing.Id., at 4; see also Tr. (Mar. 14, 2002), at 12-14.
The court advised the petitioner that he could not pursue an interlocutory appeal challenging the probable cause hearing until there had been a final judgment, i.e., a conviction. Id., at 5 and 7. The court advised the petitioner the case would go to trial. "If, in fact, you are acquitted, there is no harm done. If, in fact, you are convicted, which means if the jury comes back and finds you guilty, then the lawyer taking the appeal to the Supreme Court, or the Appellate Court raises various issues. Some issues will be relative to the probable cause hearing[.]"Id., at 5. The petitioner acknowledged he understood, based upon the court's explanation, that he could not appeal the probable cause hearing until he was sentenced. Id., at 7. The court then denied the petitioner's oral motion to dismiss counsel and advised the petitioner the matter would be set down for trial within the next one or two weeks. Id., at 8.
A review of the plea transcript shows that the petitioner pleaded guilty under the Alford doctrine shortly before the New Haven trial was scheduled to begin. Resp't Ex. 7 (Tr. Oct. 27, 1989), at 2-5. The plea transcript also shows that the court's canvass prior to acceptance of the pleas was proper, that there was a factual basis for the guilty pleas, and that the guilty pleas were voluntary, knowing and made with the assistance of competent counsel. Id., at 5-14. The matter was then continued to December 15, 1989, for sentencing.
At the sentencing on December 15, 1989, Attorney Blessinger indicated to the court that the petitioner pleaded guilty because of the CT Page 9634 overwhelming evidence that the state would present at trial. Resp't Ex. 8, at 5. As to the element of intent necessary for a murder conviction under General Statutes § 53a-54a (a), Attorney Blessinger informed the court that the petitioner's version of events differed from the state's in that the petitioner claimed that the shooting was not predetermined or preplanned. Id., at 5. The petitioner himself addressed the court prior to sentencing and reiterated his contention that he did not intend to kill anyone and was acting in self-defense. Id., at 7 and 9. The petitioner was then sentenced by the court in accordance with a court-indicated total effective sentence of fifty years. Pet'r Ex. 7 (Tr. Oct. 27, 1989), at 8.
On appeal, the petitioner raised three claims challenging the second probable cause hearing, as well as a claim that his guilty plea was rendered constitutionally defective by the trial court incorrectly accepting a guilty plea which had been entered into because of three alleged trial court errors. As to the claims challenging the probable cause hearing, the Supreme Court concluded that the petitioner's "entry of a guilty plea under the Alford doctrine constituted a waiver of [these] . . . claims." State v. Niblack, supra, 220 Conn. 277. As to the alleged trial court errors which invalidated the guilty plea, a claim raised for the first time on appeal, the Supreme Court applied theGolding test, which "articulate[s] guidelines for the application of the standard of review for errors not preserved at trial[.]" Id., at 278. The Supreme Court agreed with the state's contention "that review of this claim, not raised below, is precluded because none of the reasons offered by the [petitioner] in support of his claim implicate constitutional rights and therefore fail to satisfy the second condition articulated inState v. Golding." Id.
The petitioner in this matter made no attempt to withdraw his guilty pleas prior to sentencing. While the petitioner did raise the claim that his guilty plea had been invalidated by the trial court, a claim reviewed by the Supreme Court in accordance with Golding, he did not, however, challenge the guilty pleas on the basis of ineffective assistance of counsel. Upon the respondent raising the defense of cause and prejudice, the burden is on the petitioner to show the cause for the failure to raise the claim at the trial and appellate levels, as well as the prejudice to the petitioner as a result of this failure. The petitioner has shown neither cause for the failure to raise the claim nor prejudice resulting therefrom. Consequently, this Court finds that the petitioner has procedurally defaulted as to his claim that defense counsel's failure to ensure that the petitioner's pleas were knowing, intelligent and voluntary rendered the petitioner's guilty pleas constitutionally defective. CT Page 9635
The petitioner's second claim is that Attorney Blessinger's performance was deficient in that he inadequately and incorrectly advised, as a result of not adequately researching the applicable law, the petitioner concerning the effect his guilty pleas would have on an appeal challenging the second probable cause hearing. This habeas claim clearly arises from the Supreme Court's conclusion in the petitioner's direct appeal that "entry of a guilty plea under the Alford doctrine constituted a waiver of his three claims [on appeal] challenging the validity of his probable cause hearing." State v. Niblack, supra, 220 Conn. 277. The central aspect of the petitioner's second claim is that his waiver of the claims he wanted to raise on appeal resulted from counsel's deficient performance.
On October 16, 1989, the date the petitioner attempted to have Attorney Blessinger replaced, the petitioner indicated to the court that he wanted to pursue an interlocutory appeal challenging the second probable cause hearing. Resp't Ex. 6 (Tr., Oct. 16, 1989), at 2-4. The court's colloquy with the petitioner shows that the petitioner was advised that he could not pursue an interlocutory appeal challenging a probable cause hearing until after judgment (i.e., judgment and sentencing). Id., at 5-7. Neither the transcript of October 16, 1989, nor the transcript of the change of plea; Resp't Ex. 7 (Tr. Oct. 27, 1989); contains any reference to the effect the guilty plea would have on an appeal challenging the probable cause hearing.
The petitioner testified at the habeas corpus trial that he "wanted to appeal the probable cause hearing, but [he] had to wait until the case was over with." Tr. (Mar. 14, 2002), at 13. When asked whether Attorney Blessinger advised him that pleading guilty would waive the right to appeal the probable cause hearing, the petitioner replied "No, he told me that I could appeal even if I pled guilty[.]" Id., at 14. The petitioner also testified that he pleaded guilty so that he could challenge the probable cause hearing, that his "only concern was [the] probable cause hearing," and that he was hoping to get another lawyer in place of Attorney Blessinger on the appeal. Id., at 18. "If I got another lawyer, I felt I would be okay because the other lawyer on appeal would do as I asked and pursue my probable cause hearing. So, that was my only concern." Id.
The petitioner in his direct appeal attacked the second probable cause hearing on three grounds: that the trial court denied his request for a copy of the statement given to the New Haven police by the state's sole witness at the second probable cause hearing; that the trial court failed to hold a probable cause hearing within sixty days from the issuance of the information as required by General Statutes § 54-46a (b); and that the trial court denied him the opportunity to present evidence of an CT Page 9636 affirmative defense that would have negated a finding of intent, which is a necessary element of the crime of murder. State v. Niblack, supra,220 Conn. 275. The claims raised in the habeas petition only pertain to Attorney Blessinger' s representation, which allegedly resulted in the petitioner's unsuccessful attempt in challenging the second probable cause hearing on appeal. Even if there were errors committed by the trial court and Attorney Blessinger, the petitioner nevertheless must show that he was prejudiced by these errors. Consequently, the petitioner must show that there is a reasonable probability he would have prevailed on these claims on appeal.
As to the claim that the trial court denied the petitioner's request for a copy of the statement given to police by the sole witness at the second probable cause hearing, the trial court relied on State v.Mitchell, 200 Conn. 323, 338, 512 A.2d 140 (1986), and General Statutes § 54-46a to deny the petitioner's request. Resp't Ex. 4 (Tr. Nov. 15, 1988), at 25-6. Under Mitchell, the prosecution has a duty to disclose exculpatory information. See also State v. Hammond, 221 Conn. 264,292, 604 A.2d 793 (1992). General Statutes § 54-46a (b) specifies that "No motion to suppress or for discovery shall be allowed in connection with" a probable cause hearing. The trial court noted that while the petitioner had a right to cross-examine the witness, there was no right to discovery. Resp't Ex. 4 (Tr. Nov. 15, 1988), at 29. On appeal, the petitioner "bears a heavy burden to establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material." State v. Santiago,245 Conn. 301, 311, 715 A.2d 1 (1998). The petitioner has in no way shown a reasonable probability he would have prevailed on this claim on appeal.
The second claim arising from the probable cause hearing was the failure to have a probable cause hearing within sixty days from the issuance of the information as required by General Statutes § 54-46a
(b). In Santiago, the appellant had claimed that only a defendant can waive the sixty-day requirement. The Supreme Court agreed with the state's argument "that a waiver of the sixty day period in which to hold the probable cause hearing may be asserted by the attorney for the defendant and does not require the defendant personally to appear and be canvassed." Id., at 315. In the present case, the first probable cause hearing was on September 15, 1988. Resp't Ex. 2. On November 8, 1988, the court heard arguments on the petitioner's motion to vacate the finding of probable cause. Resp't Ex. 3. The court granted the motion, after which the second probable cause hearing occurred on November 15, 1988. See Resp't Ex. 4 (Tr. Nov. 15, 1988).
At the hearing on the motion to vacate the finding of probable cause, CT Page 9637 the court asked counsel whether he would waive the sixty-day requirement, because a granting of the motion to vacate the finding of probable cause would likely result in having the second probable cause hearing outside the sixty-day requirement. Resp't Ex. 3, at 11. Counsel for petitioner waived the sixty-day requirement. Id. General Statutes § 54-46a (b) requires that the probable cause hearing is to occur with sixty days of the filing of the complaint or information, "[u]nless waived by the accused person or extended by the court for good cause shown[.]" In the petitioner's case, counsel waived the sixty-day requirement. Additionally, granting the motion to vacate the finding of probable cause and having the second probable cause hearing within one week satisfies the good cause test. The petitioner has not demonstrated a reasonable probability he would have prevailed on this claim on appeal.
The last probable cause based claim is that the trial court denied the petitioner the opportunity to present evidence of an affirmative defense that would have negated a finding of intent, which is a necessary element of the crime of murder. After the second finding of probable cause, the petitioner made a specific offer of proof under General Statutes §54-46a (b). Resp't Ex. 4, at 61-2. Such offer of proof can include "the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause." General Statutes § 54-46a (b).
"In making a finding of probable cause, the trial court must determine whether the evidence offered would warrant a person of reasonable caution to believe that the accused had committed the charged offense. Evidence is not required to rise to a significant level of trustworthiness in order to meet the probable cause standard. The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. Our cases have made clear that there is often a fine line between mere suspicion and probable cause, and that line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Internal citations and quotation marks omitted.)State v. Burke, 51 Conn. App. 798, 804-5, 725 A.2d 370 (1999), affd,254 Conn. 202, 757 A.2d 524 (2000).
The court found, at the conclusion of the second probable cause hearing, that there was probable cause that the crime of murder was committed, that the petitioner committed the crime, and that the intent element required for murder was addressed by the witness's testimony that the petitioner pointed the gun down and aimed in the direction of the victim. Pet'r Ex. 4 (Tr. Nov. 15, 1988), at 59-60. The petitioner's offer of proof was the testimony of Eric Dickerson, a witness to the shooting. CT Page 9638 The offer of proof included testimony by Mr. Dickerson that he [Mr. Dickerson] was afraid for his life and that he observed the petitioner fire shots without directly aiming at anyone. Id., at 61-2. This offer of proof was made to "rebut a finding of probable cause as it relates to murder." Id., at 62.
General Statutes § 54-46a (b) mandates that a "court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause." The trial court held that the petitioner's offer of proof was insufficient to rebut the finding of probable cause. Id., at 67. The petitioner has not made a showing that it is reasonably probable that the outcome of the second probable cause hearing would have been affected by Mr. Dickerson's testimony. State v. Gant, 213 Conn. 43, 54-5, 646 A.2d 835
(1994) (no deprivation of constitutional right to fair trial though state failed to disclose exculpatory evidence). The petitioner also has not shown, for purposes of the habeas corpus petition, that there is a reasonable probability he would have prevailed on appeal on his claim that the court denied him the opportunity to present at the probable cause hearing an affirmative defense that would have negated a finding of intent. Consequently, the petitioner has failed to show any prejudice arising from counsel's failure to preserve the petitioner's claims challenging the second probable cause hearing.
The petitioner's third and final habeas corpus claim is that defense counsel did not adequately advise the petitioner concerning the option of entering a conditional plea of nolo contendere. The thrust of this argument is that such a conditional plea would have allowed the petitioner to raise claims on appeal and not have such claims deemed waived, as occurred with the probable cause claims. Attorney Blessinger testified at the habeas corpus trial that the plea agreement with the state specifically excluded such a conditional plea, that such a plea was not offered and available to the petitioner. Tr. (Apr. 30, 2002), at 32-42. This Court finds the testimony by Attorney Blessinger to be credible. Consequently, the petitioner's third claim is without merit.
This Court has found that the petitioner procedurally defaulted as to the first claim raised in the amended petition. The petitioner has also failed to affirmatively show any prejudice resulting from alleged errors by the trial court or counsel as they relate to the second probable cause hearing. Lastly, the petitioner's third claim is found to have no merit. Based upon the foregoing, the petition seeking habeas corpus relief is denied.
GRAZIANI, JUDGE. CT Page 9639